# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| BRENDA BALDWIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 5:17-cv-00512-SGC |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, Commissioner, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Brenda Baldwin, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Baldwin timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

**I. Procedural History**

Baldwin did not complete high school or obtain a GED. (Tr. at 41). Her last job was working for the Jefferson County, Alabama Department of Roads and Transportation as a dump truck driver and equipment operator. (*Id.* at 42, 68-70).

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

In her application for DIB, she claimed she became disabled on September 3, 2014, due to back problems; fibromyalgia; arthritis in her hands, shoulders, and left knee; carpel tunnel syndrome in both hands; plantar fasciitis; and restless leg syndrome. (*Id.* at 87-88). After her claims were denied, Baldwin requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 108). Following a hearing, the ALJ denied Baldwin's claim. (*Id.* at 24-32.). Baldwin was 48 years old when the ALJ issued her decision. (*Id.* at 26). After the Appeals Council declined to review the ALJ's decision (*Id.* at 3-5), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Baldwin initiated this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*,

405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Baldwin met the insured status requirements of the Social Security Act through December 31, 2018, and has not engaged in substantial gainful activity since her alleged onset date of September 3, 2014. (Tr. at 26).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical

3

and laboratory diagnostic techniques." *Id.* at § 404.1508. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[2] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

4

impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Baldwin has the following severe impairments: degenerative disc disease and osteoarthritis of the cervical and lumbar spine, sciatic joint disease, degenerative joint disease of the right shoulder, tendinitis of the right shoulder rotator cuff, a partial tear of the right shoulder status post-arthroscopic repair, bilateral plantar fasciitis status post-bilateral percutaneous plantar fasciotomies, status post-left gastrocnemius recession with residual sural neuropraxia, fibromyalgia, and obesity. (Tr. at 26).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26. The claimant bears the burden of proving her impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Baldwin does not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (Tr. at 28).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545. A claimant's RFC is the most he can do despite his impairment. *See id.* at § 404.1545(a)(1). At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined Baldwin has the RFC to perform a limited range of light work. (Tr. at 28).[3] At the fourth step, the

---

[3] The ALJ determined Baldwin can occasionally lift and/or carry up to twenty pounds; she can frequently lift and/or carry ten pounds; she can stand and/or walk in combination for at least six hours during an eight-hour workday, with normal breaks; she requires the need to alternate sitting and standing in thirty-minute to one-hour increments; she can occasionally climb ramps and stairs; she should never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally stoop; she can never kneel, crouch, or crawl; she would need to use her right upper extremity to perform overhead work activities and reach above the shoulder level; she can occasionally perform push-pull movements with her right upper extremity limited to the shoulder

ALJ determined Baldwin is not capable of performing any of her past relevant work. (*Id.* at 31).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Baldwin's age, education, work experience, and RFC, the ALJ determined Baldwin can perform jobs that exist in significant numbers in the national economy, such as those of inspector, hand packager, and sorter. (Tr. at 32). Therefore, the ALJ concluded Baldwin is not disabled. (*Id.*).

**III. Standard of Review**

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the

---

level; she should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and vibration; and she should avoid exposure to industrial hazards, including working at unprotected heights and in close proximity to moving dangerous machinery. (Tr. at 28).

Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted

mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. Discussion**

On appeal, Baldwin argues (1) the ALJ's determination Baldwin has the RFC to perform sedentary work[4] is not supported by substantial evidence, (2) the ALJ failed to show good cause for dismissing the opinion and treatment records of Dr. Lorn Miller, and (3) the ALJ failed to assign any weight to the opinions of Dr. J. Ty Blackwell. (Doc. 13 at 17-32).

**A. RFC Assessment**

Baldwin has a well-documented history of lower back pain. In 2011, she was referred to Dr. Miller by her primary care physician, Dr. Blackwell, for a neurological evaluation and lower back pain consultation. (Tr. at 518). During her first appointment with Dr. Miller, Baldwin reported her lower back pain began in 2007 and that in the past Lortab had made it tolerable and enabled her to continue working. (*Id.*). Dr. Miller gave Baldwin prescriptions for Lortab and Cymbalta. (*Id.* at 523). Dr. Miller continued to treat Baldwin for lower back pain and fibromyalgia until September 2014. (*Id.* at 272-327, 518-24). Baldwin's last appointment with Dr. Miller was on September 22, 2014. (*Id.* at 324, 421). On that date, Baldwin reported to Dr. Miller her lower back pain was stable and she

---

[4] In fact, the ALJ determined Baldwin has the RFC to perform a limited range of light work. (Tr. at 28).

9

felt prescription pain medication controlled that pain well. (*Id.* at 324). She further reported she felt prescription pain medication controlled her fibromyalgia pain and allowed her to continue her daily chores and activities. (*Id.*). Moreover, between April 17, 2012, and December 16, 2014, Baldwin saw Dr. Blackwell twelve times, and during each visit reported her lower back pain and fibromyalgia pain were stable with pain medication prescribed by Dr. Miller. (*Id.* at 245, 248, 251, 256, 257, 258, 261, 264, 267, 379, 382, 387). Between January 20, 2015, and May 20, 2015, Baldwin was under the care of various medical professionals at a pain management center for her lower back pain, as well as pain in her neck. (*Id.* at 441-66). At each visit, she reported she was happy with her current pain regimen and/or that she experienced forty- to fifty-percent relief with prescription pain medication. (*Id.* at 441, 442, 446, 451, 460). A Magnetic Resonance Imaging (MRI) scan performed on January 28, 2015, revealed mild degenerative changes of the lumbar and cervical spine. (*Id.* at 451, 455-59).

During an appointment with Dr. Blackwell on January 21, 2013, Baldwin complained of pain in her right shoulder that materialized four weeks prior. (*Id.* at 379). Between May 29, 2013, and December 16, 2014, Baldwin reported to Dr. Blackwell that her shoulder pain was stable. (Id. at 258, 261, 264, 267, 382, 387). On June 26, 2015, following an MRI, Dr. David Dueland diagnosed Baldwin with a partial tear of the right shoulder rotator cuff, biceps tendinitis, and degenerative

joint disease of the acromioclavicular joint. (*Id.* at 478, 488). On July 16, 2015, Dr. Dueland performed several surgical procedures related to these diagnoses. (*Id.* at 485). Dr. Dueland referred Baldwin to physical therapy following her shoulder surgery. (*Id.* at 468). A therapy progress note dated August 18, 2015, recorded that Baldwin did not report pain in her right upper extremity, that she was progressing well, and that her range of motion was within functional limits. (*Id.* at 469). At a follow-up visit with Dr. Dueland on August 20, 2015, Baldwin reported she was doing well and had no complaints. (*Id.* at 482).

Between March 14, 2014, and November 20, 2014, Baldwin underwent four surgical procedures to relieve symptoms of bi-lateral plantar fasciitis and an equinus contracture of the left foot. (*Id.* at 332, 340, 350, 527). On January 16, 2015, at a follow-up visit with one of the surgeons who performed these procedures, Baldwin reported that while she was experiencing some numbness in her leg and foot, her pain had significantly improved. (*Id.* at 529). The ALJ noted that at the hearing, Baldwin indicated she did not wear inserts or orthotics, which additionally led the ALJ to conclude Baldwin's foot problems had improved. (*Id.* at 30).

Finally, the ALJ found that Baldwin's daily activities were inconsistent with disabling symptoms and limitations. (*Id.* at 30-31). The ALJ noted Baldwin reported she is able to care for herself, drive, attend church once per week and

small groups twice per week, and shop online. (*Id.* at 31). The record generally supports the determination Baldwin is able to perform these activities to some extent. (*Id.* at 46, 204-05, 370).

The foregoing constitutes substantial evidence supporting the ALJ's determination Baldwin is able to perform a limited range of light work.

### B. Weight Assigned to Dr. Miller's Opinions

An ALJ may disregard a treating physician's opinion if he articulates good cause for doing so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id*. (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)); *see also Crawford*, 363 F.3d at 1159 (holding ALJ properly discounted treating physician's opinion claimant was disabled because, amongst other things, that opinion appeared to be based primarily on claimant's subjective complaints of pain). An opinion as to whether a claimant is able to work is not a medical opinion, even if offered by a treating source, but rather a dispositive finding for the ALJ to make. 20 C.F.R. § 404.1527(e)(1); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010). It is entitled to no special significance. 20 C.F.R. § 404.1527(e)(3); *Kelly*, 401 F. App'x at 407.

On December 22, 2015, Dr. Miller completed a functional capacity assessment for Baldwin, noting limitations at variance with some of those found by the ALJ and further opining Baldwin would be expected to miss one hundred or more full or partial days of work each year on account of her impairments. (*Id.* at 402-04). On this date, he also gave a sworn statement opining Baldwin is no longer able to do any kind of work. (*Id.* at 430-31). The ALJ assigned limited weight to Dr. Miller's opinion regarding Baldwin's RFC because it was rendered within a period of weeks following Baldwin's last surgery and, thus, before Baldwin had sufficient time to recover. (*Id.* at 30). In fact, Dr. Miller completed the functional capacity assessment for Baldwin and gave his sworn statement approximately five months following Baldwin's last surgery. (*Id.* at 324, 404, 406, 421). However, he had not examined Baldwin since September 22, 2014, more than a year before offering his opinion regarding her limitations. (*Id.* at 324, 421). In the intervening time, Baldwin underwent a foot and shoulder surgery. (*Id.* at 405, 527). The medical evidence indicates those surgeries were successful in alleviating the problems Baldwin was experiencing with her foot and shoulder. (*Id.* at 482, 469, 529). Accordingly, although the ALJ was mistaken as to the timing of Dr. Miller's opinion regarding Baldwin's RFC, the rationale underlying her assignment of limited weight to that opinion – that Dr. Miller did not have knowledge of Baldwin's current, post-operative condition – holds. That rationale

13

constitutes good cause for the ALJ's assignation of limited weight to Dr. Miller's opinion of Baldwin's RFC. *See Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (holding ALJ articulated good cause for assigning little weight to treating physician's opinion where, *inter alia*, claimant had not seen treating physician for seven years before opinion rendered). Moreover, Dr. Miller's opinion that Baldwin cannot work is not entitled to special significance. See 20 C.F.R. § 404.1527(e)(1) & (3); *Kelly*, 401 F. App'x at 407; *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (holding ALJ did not err by declining to accord controlling weight to treating physician's statement he doubted claimant would ever be able to return to gainful employment because such statement is a dispositive finding left to ALJ, not a medical opinion).

**C. Failure to Assign Weight to Dr. Blackwell's Opinions**

"The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Ordinarily, an ALJ's failure to do so is reversible error. *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975 (11th Cir. 2014); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008). "When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision

14

will stand." *Caldwell*, 261 F. App'x at 190; *see also Tillman*, 558 F. App'x at 975. Because, as discussed above, Dr. Blackwell's treatment records are consistent with the ALJ's determination of Baldwin's RFC, her failure to assign specific weight to Dr. Blackwell's opinions was harmless error. *See Caldwell*, 261 F. App'x at 190 (holding ALJ's failure to state weight accorded medical opinions was harmless error because those opinions did not contradict ALJ's findings or change result).

**V. Conclusion**

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 28th day of September, 2018.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE